**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 22-91-DLB-EBA**

**BRANDON BANNISTER**                                                                                   **PLAINTIFF**

**v.**                                                  **MEMORANDUM OPINION AND ORDER**

**KEVIN C. PEARCE, JR., et al.**                                                        **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

Kevin C. Pearce, Terry L. Melvin, and Hector Joyner ("Defendants") have each filed a Motion to Dismiss the Complaint.  (Docs. # 22, 23, and 27).  Bannister filed his Responses to each Motion (Docs. # 28, 29, and 32), and Defendants filed Replies (Docs. # 30, 31, and 34).  For the reasons stated below, Defendants' Motions to Dismiss are **granted** in part and **denied** in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Brandon Bannister was incarcerated at U.S. Penitentiary Big Sandy ("Big Sandy") when the incidents that gave rise to his Complaint took place.  (Doc. # 1 ¶ 4). He brings this case against Defendants Kevin C. Pearce, Terry L. Melvin, and Hector Joyner for violation of his Constitutional right to be free from cruel and unusual punishment and his right to equal protection of the laws.  (Doc. # 1).  Defendants Pearce and Melvin were Lieutenants at Big Sandy.  (Doc. #1 ¶¶ 1-2).  Defendant Joyner is Warden of Big Sandy.  (Doc. #1 ¶ 3).

Bannister alleges that on the morning of April 20, 2021, he and his cellmate were removed from their cell at Big Sandy and taken to a body scanner for a contraband

search.  (Doc. #1 ¶ 8).  When the scanner results were negative, Bannister and his cellmate were taken to Defendant Pearce's office, placed in connected cells, and strip-searched.  (*Id.* ¶ 9).  Bannister then asked to go to the bathroom, to which Pearce allegedly responded, "we do things different [in Big Sandy]" and that Bannister was "going to have a long day."  (*Id.* ¶¶ 10-11).  Bannister alleges that soon after, Pearce pepper sprayed him while laughing and saying, "why do you keep banging your head."  (*Id.* ¶ 12).  Pearce then handcuffed Bannister, entered the cell Bannister was being held in, and proceeded to "beat, stomp, and kick" Bannister while calling him the n-word and other racial slurs.  (*Id.* ¶¶ 14-15).  After this assault, Pearce and another officer picked Bannister up off the ground, bent him over, and walked him backwards to the Special Housing Unit ("SHU").  (*Id.* ¶ 16).  In SHU, Bannister was stripped, put in a paper gown, and chained at his waist and feet.  (*Id.* ¶ 17).  Later that day, Bannister began the grievance process by filing an informal complaint through a BP-8 form, to which he did not receive a response.  (*Id.* ¶¶ 18-19).  A few months later, in August of 2021, Bannister filed another BP-8 form. (*Id.* ¶ 20).

On August 27, 2021, Bannister alleges that Pearce, this time with Defendant Melvin, approached his cell, handcuffed him, and forced him to walk backwards to a restraint room that had no surveillance cameras.  (*Id.* ¶¶ 21-22).  Bannister alleges that while in the restraint room, Pearce and Melvin "beat him for several minutes while using racial slurs."  (*Id.* ¶ 23).  Pearce and Melvin allegedly threatened Bannister, saying they would kill him if he complained about his treatment.  (*Id.* ¶ 24).  After this assault, Bannister was returned to his cell by Pearce and Melvin and left to bleed for several hours.  (*Id.* ¶¶ 25-26).  An officer on the next shift took Bannister to get medical treatment.  (*Id.* ¶ 27).

On September 7, 2021, Bannister filed a formal complaint through a BP-9 form, to which he did not receive a response.  (*Id.* ¶¶ 28-29).  Bannister alleges that other inmates at Big Sandy have reported similar abuse, and as such, Defendant Joyner was on notice that these abuses were occurring but did nothing to protect prisoners. (*Id.* ¶¶ 31-32, 37).

Bannister brings his claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights. Bannister alleges in Count One that Pearce, Melvin, and Joyner violated Bannister's Eighth Amendment right to be free from cruel and unusual punishment.  (*Id.* ¶¶ 33, 34).  Bannister alleges in Count Two that Pearce and Melvin conspired to deprive him of equal protection of the laws on the basis of his race.  (*Id.* ¶ 39).  On August 26, 2022, Bannister filed his Complaint with the Court. (Doc. # 1). Defendants each filed a Motion to Dismiss for failure to state a claim.  (Docs. # 22, 23, and 27).

## II.  ANALYSIS

### A.  Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's pleading must meet the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  This requires that the plaintiff plead sufficient factual matter to show he is entitled to relief under a viable legal theory.  *See Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 773 (6th Cir. 2014).  This Court accepts as true all factual

allegations made by Bannister in his Complaint and construes them in the light most favorable to Bannister as the non-moving party. *Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 773 (6th Cir. 2014).

### B. *Bivens* Claim

Bannister seeks to assert a claim against all three defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court has developed a two-step test to determine whether a claim under *Bivens* is viable. First, this Court must ask whether Bannister's case presents a new context under *Bivens*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). If it does present a new context, which most cases will, then the Court must consider whether there are any "special factors" that weigh in favor of recognizing the new context. *Id.* This is an "exacting" test that will "almost always" result in the court declining to recognize a new *Bivens* action. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021).

### 1. *Bannister's case presents a new context not currently supported by* Bivens.

The Supreme Court has carved out three possible causes of action under *Bivens*: (1) a Fourth amendment claim for unlawful arrest and search against federal agents, (2) a Fifth Amendment sex discrimination claim against a former congressional staffer, and (3) a federal prisoner's Eighth Amendment claim for inadequate medical care. *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (citing *Bivens*, 403 U.S. at 397); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)). The Supreme Court has not implied any additional causes of action, and in fact has since urged that recognizing any additional causes of action under *Bivens* is "a disfavored judicial activity." *Egbert*,

4

142 S. Ct. at 1803 (quoting *Hernández*, 140 S. Ct. 735, 742-43 (2020) (internal quotation marks omitted)).

Bannister argues that his case is not a new *Bivens* context because it is not meaningfully different than *Carlson v. Green*.  (Docs. # 28 at 4, 29 at 4, and 32 at 4).  The Court disagrees.  For the purposes of a *Bivens* analysis, a difference is considered "meaningful" if it "involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion." *Brown v. Fed. Bureau of Prisons*, No. 6: 22-097-DCR, 2023 WL 3934674, at *3 (E.D. Ky. June 9, 2023) (citing *Ziglar*, 137 S. Ct. at 1860).  This case involves a different constitutional right, a different category of officers as defendants, and a difference in agency actions that are at issue.

In *Carlson*, the plaintiff was given improper medical care by prison physicians and nurses.  581 F.2d 669, 671 (7th Cir. 1978), *aff'd*, 446 U.S. 14 (1980).  He had an underlying medical condition that prison officials were aware of.  *Id.*  He was being treated for this condition when the drugs administered by the prison ultimately caused his death. *Id.*  In comparison, Bannister's alleged injuries arose from excessive force used by prison officers, not improper medical care by the hospital staff.  Additionally, Bannister's Eighth Amendment medical indifference claim is incidental to his Eighth Amendment excessive force claim.  The Sixth Circuit has declined to extend *Bivens* to alleged harassment, threats, and abuse by prison officials because this would be a new context.  *See Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022); *see also Brown*, 2023 WL 3934674, at *3 (District Court treated case as an excessive force case even where following an alleged assault, plaintiff requested but was denied timely medical

care).  Bannister's allegations that he was left bleeding in his cell for several hours until an officer from the next shift took him to get medical treatment, (Doc. # 1 at 3), are insufficient to state a *Bivens* claim under the same context as *Carlson*.  The fact that the claims in *Carlson* and the present case both arise from the same constitutional provision is not enough to warrant finding an implied cause of action.  *See Elhady*, 18 F.4th at 885 ("[A] case may present a new context even if the claim involves one of the constitutional provisions from the original trilogy.") (citing *Hernandez II*, 140 S. Ct. at 743).

While the differences between these cases may seem trivial, the Supreme Court has instructed that "even a modest extension [of *Bivens*] is still an extension*." Ziglar v. Abbasi*, 582 U.S. 129, 147 (2017).  In *Malesko*, where the facts closely tracked *Carlson* except for the fact that the case arose in a privately-run prison, the Supreme Court still declined to find an implied cause of action.  *See Ziglar*, 582 U.S. at 138-39 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 64 (2001)).  Although the claims in *Ziglar* also involved alleged prisoner mistreatment, the Supreme Court again declined to extend *Bivens*, stating that "[t]he differences between this claim and the one in *Carlson* are perhaps small . . . [but] [g]iven this Court's expressed caution about extending the *Bivens* remedy, however, the new-context inquiry is easily satisfied."  *Id.* at 149.

### 2.   *Special factors weigh against recognizing the new context.*

The Court must next consider whether special factors weigh against recognizing the new context proposed by Bannister.  This Court finds that they do.  These "special factors" include "'whether alternative processes exist for protecting the right,' 'whether existing legislation covers the area,' and 'separation-of-powers principles.'"  *Hower*, 2022 WL 16578864, at *2 (quoting *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th

Cir. 2020)).  Federal courts are instructed not to create implied causes of action under *Bivens* if there is a "risk of interfering with the authority of the other branches."  *Callahan*, 965 F.3d at 524 (citing *Hernandez*, 140 S. Ct. at 743).  These special factors can be boiled down to a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Egbert*, 142 S. Ct. at 1803.

Federal courts have consistently answered this question in the affirmative by considering the lack of statutory analog to *Bivens*, Congress' retrenchment of prisoner litigation through the Prison Litigation Reform Act ("PLRA"), and the existence of an alternative remedial structure.  S*ee, e.g.*, *Ziglar*, 137 S. Ct. at 1865; *Callahan*, 965 F.3d at 524; *Brown*, 2023 WL 3934674, at *4.  Courts find it telling that Congress created a statutory cause of action against state actors for constitutional violations through 42 U.S.C. § 1983 but did not do so for federal actors.  *Brown*, 2023 WL 3934674, at *4.  Congress also did not include a damages remedy against federal actors when it passed the PLRA.  *See Ziglar*, 137 S. Ct. at 1865.  This tends to show that Congress did not intend for a damages remedy to exist in these cases, which "is itself a factor counseling hesitation" in creating a new context.  *Id.*‼

The existence of a prison grievance process will weigh heavily against recognizing a new context because it provides an alternative remedial structure.  *See Egbert*, 142 S. Ct. 1793 at 1804.  In this case, Bannister had access to a grievance process, which he used when he filed his BP-8 and BP-9 forms.  (*See* Doc. # 1 ¶¶ 18, 28).  Bannister argues that the grievance process is not available because "prison officials fail[ed] to comply with their part of the process."  (Doc. # 32 at 6).  However, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the

federal courts." *Egbert*, 142 S. Ct. at 1807.  The Supreme Court has urged "caution" when courts are asked to imply a *Bivens* cause of action.  *Hernandez II*, 140 S. Ct. at 742.  The Court will exercise that caution today and decline to recognize a new *Bivens* context in this case.  Accordingly, Count 1 must be dismissed.

### C.  Section 1985(3) Conspiracy Claim

Bannister also raises a 42 U.S.C § 1985(3) claim of Conspiracy to Interfere with Civil Rights against Defendants Pearce and Melvin.  Under § 1985(3), a plaintiff must allege facts sufficient to show "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The complaint must allege "both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 367-68 (6th Cir. 2012) (quotations omitted).  This requires a showing that "the alleged conspirators *shared* a common discriminatory objective." *Id.* at 368 (emphasis in original). Conspiracy claims must be pled with specificity and be supported by material facts. *Id.* at 367-68 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987)).

Bannister has sufficiently alleged class-based discriminatory animus.  He alleges that Defendants Pearce and Melvin yelled racial slurs at him while they assaulted him. (Doc. # 1 ¶ 23).  He also alleges that he had previously been the subject of a racially charged assault by one of the co-conspirators.  (Doc. # 1 ¶ 15).  The Supreme Court has recognized that the purpose of § 1985(3) was to combat animus against Black Americans.

8

*See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983).  Bannister is within a protected class and the alleged behavior of Defendants Pearce and Melvin, namely their use of racial slurs, falls squarely into the purpose of the statute.  The allegations in the complaint make it plausible that Pearce and Melvin demonstrated class-based discriminatory animus against Bannister.

Bannister has also sufficiently pled conspiracy.  Defendant Pearce argues Bannister has not sufficiently pled conspiracy because he has not shown there was a "meeting of the minds."  (Doc. # 21 at 6-7).  Defendant Melvin argues the same, in addition to arguing that the claim should be precluded under the "intercorporate conspiracy doctrine."  (Doc. # 27 at 11).   Both arguments fail.

An analysis of a "meeting of the minds" requires a showing that "there was a single plan" and facts that "actually link Defendants together as conspirators."  *See Meyers v. Mitrovich*, No. 1:14CV1604, 2015 WL 413804, at *11 (N.D. Ohio Jan. 30, 2015). Conspiracy claims will be dismissed if they include only conclusory statements and are "void of factual allegations."  *Jaco v. Bloechle*, 739 F.2d 239, 240 (6th Cir. 1984).  Here, Bannister has alleged specific facts that could indicate a "meeting of the minds" between Pearce and Melvin.  Bannister alleges that on August 27, 2021, Defendants Pearce and Melvin came to his cell together.  (*See* Doc. # 1 ¶ 21).  They then walked Bannister backwards to a restraint room with no surveillance cameras.  (Doc. # 1 ¶ 22).  Once in the room, Bannister alleges that Defendants Pearce and Melvin together beat and threatened him while yelling racial slurs at him.  (Doc. # 1 ¶ 23).  They both threatened Bannister's life.  (Doc. # 1 ¶ 24).  Bannister has also alleged facts that similar abuse had previously been reported, and Pearce specifically has been indicted for unlawful assaults

while a Lieutenant at Big Sandy and writing false reports to cover up assaults (Doc. # 29 at 10, Exhibit # 1).  Bannister also alleged that Pearce was involved in the April 20, 2021 assault against him.  (Doc. # 1 ¶¶ 9-17).  Courts recognize that direct evidence of conspiracy is hard to come by, and therefore may infer conspiracy through circumstantial evidence.  *See Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000).  Taking these facts in the light most favorable to Bannister and drawing all inferences in his favor as is required at the motion to dismiss stage, the Court finds that Bannister has sufficiently pled a claim of conspiracy.

The intercorporate conspiracy doctrine does not apply here. The Sixth Circuit has carved out an exception to the intercorporate conspiracy doctrine for conduct that falls outside Defendants' scope of employment.  *See Johnson*, 40 F.3d at 841.  Defendants' conduct in this case cannot be said to be within their scope of employment because the facts in the Complaint allege an assault that was unprovoked and not for a legitimate purpose.  *See Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (explaining that use of force may be excessive when applied "maliciously and sadistically" rather than for a "good faith" reason).  In fact, Bannister has included an exhibit in the record that includes allegations of Pearce's past conduct, including allegations that he has previously falsified reports of assaults at Big Sandy and unlawfully assaulted other inmates at Big Sandy.  (Doc. # 29 at 10, Exhibit # 1); *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider . . . items appearing in the record of the case . . .so long as they are referred to in the Complaint and are central to the claims contained therein.").  The allegations in the attached indictment against Pearce and other officers tends to show that their behavior

is not sanctioned by the law or by the Bureau of Prisons.  For the foregoing reasons, Bannister has sufficiently pled a claim of conspiracy under §1985(3).

### D.      Statute of Limitations

Defendant Pearce argues that Bannister's conspiracy claim is time barred.  Under Kentucky state law, the statute of limitations for a § 1985(3) conspiracy claim is one year. *McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *3 (6th Cir. Nov. 22, 2022). Pearce argues that any conspiracy claims arising a year before the Complaint was filed are time barred.  (Doc. # 22 at 8).  However, the conspiracy claims arise from the August 27, 2021 conduct and the Complaint was filed on August 26, 2022.  (*See* Doc. # 1). Therefore, Bannister's conspiracy claim was filed within the one-year statute of limitations and is not time barred.

### E.  Qualified Immunity

Defendant Melvin argues that the claims against him should be dismissed because he is entitled to qualified immunity.  (Doc. # 27 at 12).  Qualified immunity will be granted unless the plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cunningham v. Shelby Cty*., 994 F.3d 761, 764 (6th Cir. 2021).  Both prongs of the test are met here.

Melvin violated Bannister's statutory rights under § 1985(3) as discussed in section C, *supra*, when he and Pearce allegedly conspired to conduct their racially charged assault.  Melvin also violated Bannister's constitutional right to be free from excessive force under the Eighth Amendment because the alleged assault was purely an

"unnecessary and wanton infliction of pain" with no legitimate purpose. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)."''

It has been clearly established at least since 1980 that "the use of excessive force by correctional officers against prisoners violate[s] the prisoners' right to due process of law." *Thomas v. Haltom*, 840 F.2d 18 (6th Cir. 1988). The Sixth Circuit has reaffirmed that "assaults on subdued, restrained and nonresisting . . . convicted prisoners are impermissible." *Coley v. Lucas Cty.*, 799 F.3d 530, 540 (6th Cir. 2015). There is no evidence in the record that Defendants had any legitimate reason why they may have needed to use force on Bannister. Rather, the facts allege an unprovoked assault by the Defendants against an incarcerated person who was restrained and nonresisting. (*See* Doc. # 1 at 21-24)

The Supreme Court has held that "qualified immunity [will] be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Harlow*, 457 U.S. 800, 815 (1982) (emphasis in original) (citations omitted). This Court finds it difficult to see how Melvin can argue that he was not aware that beating an incarcerated person while using racial slurs could violate the constitutional rights of the incarcerated person in his care. Qualified immunity does not protect defendants when they "knowingly violate the law," as Melvin did here. *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### F.  Supervisory Liability

Defendant Joyner argues that the claims against him based on supervisory liability should be dismissed. The Sixth Circuit has held that "the doctrine of respondeat superior

cannot provide the basis for liability in a *Bivens* action." *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978)). To assert a claim against Joyner, Bannister must allege that Joyner "condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct." *Id.* Bannister generally states that Joyner "took no action to protect prisoners" and that he was on notice of similar abuses based on reports from other persons incarcerated at Big Sandy. (Doc. # 1 at 4). But these facts alleged by Bannister do not show that Joyner condoned or encouraged this specific behavior by Pearce and Melvin. Bannister needed to have alleged facts showing that Joyner had "'direct responsibility' for the actions of the individual officers". *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 873 (6th Cir. 1982) (quoting *Rizzo v. Goode*, 423 U.S. 362, 376 (1976)). Allegations of "failure to act" even if the plaintiff can show a "statistical pattern" of incidents, as Bannister attempts here, is insufficient. *Id.* (quoting *Rizzo* 423 U.S. at 376). Therefore, Bannister has not pled sufficient facts showing that Joyner directly condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct by Pearce and Melvin in this case.

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** as follows:

(1)   Defendants Pearce and Melvin's Motions to Dismiss the complaint (Docs. # 22 and 27) are **GRANTED with respect to Count 1** and **DENIED with respect to Count 2**;

(2)   Defendant Joyner's Motion to Dismiss the complaint (Doc. # 23) is **GRANTED** in full; and

(3)    Defendants Pearce and Melvin **shall file Answers not later than twenty (20) days from the date of entry of this Order**.

This 23rd day of August, 2023.

Signed By:

*David L. Bunning*

United States District Judge