UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 22-91-DLB-EBA

BRANDON BANNISTER                                                                                           PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

KEVIN C. PEARCE, JR., et al.                                                                            DEFENDANTS

*** *** *** *** *** ***

I.   INTRODUCTION

This matter is before the Court on Defendant the United States of America's Motion to Dismiss the First Amended Complaint.  (Doc. # 71).  Brandon Bannister ("Plaintiff") has filed his Response (Doc. # 76), the United States filed its Reply (Doc. # 78), and this matter is now ripe for review.  For the following reasons, the United States' Motion to Dismiss (Doc. # 71) is **granted.**

II.  FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of the alleged mistreatment Plaintiff suffered while incarcerated at United States Penitentiary ("USP") Big Sandy, in Martin County, Kentucky, at the hands of Defendants Kevin Pearce Jr. ("Pearce"), and Terry Melvin ("Melvin").  (Doc. # 63).  At the time the alleged mistreatment took place, both Melvin and Pearce were employed by the Federal Bureau of Prisons ("BOP"), each holding the rank of Lieutenant, at USP Big Sandy.  (*Id.* ¶¶ 7–8).

1

Plaintiff alleges that on the morning of April 20, 2021, he and his cellmate were taken out of their cell and to a body scanner to be searched for contraband. (*Id.* ¶ 10). The body scan came back negative for contraband; however, Plaintiff alleges that he and his cellmate were taken to Pearce's office, "placed in connected cages, and strip searched." (*Id.* ¶ 12). After the strip search, but while Plaintiff was still in Pearce's office, Plaintiff alleges that he requested to use the restroom to which Pearce responded by saying "we do things different" in Big Sandy "you're going to have a long day." (*Id.* ¶¶ 11-12). Shortly thereafter, Pearce allegedly approached Plaintiff, pepper sprayed him while laughing and asked him why he kept banging his head. (*Id.* ¶ 13). According to Plaintiff, Pearce then placed him in hand restraints, entered his cage and beat him with a metal baton, while calling him a number of racial slurs. (*Id.* ¶¶ 14-16). Plaintiff was then picked up off the ground by Pearce and "two other unknown officers." (*Id.* ¶ 17). The officers then bent Pearce over, held him by the back of his neck, and "forced him to walk backwards to the Special Housing Unit" ("SHU"). (*Id.*). Plaintiff was then placed in a paper gown and chained at his waist and feet. (*Id.* ¶ 18). Plaintiff filed a BP-8 form to report the beating that same day but did not receive a response. (*Id*. ¶¶ 19-20). Plaintiff filed another BP-8 in August of 2021. (*Id.* ¶ 21).

Plaintiff alleges that another beating took place the following August. (*Id.* ¶ 24). On August 27, 2021, Plaintiff alleges that Pearce and Melvin went to Plaintiff's cell and handcuffed him, then they bent him forward and forced him to walk backwards to a room with no surveillance cameras. (*Id.* ¶ 22-23). Once in the room Pearce and Melvin allegedly beat him for several minutes and threatened to kill him if he complained about his beatings. (*Id.* ¶¶ 24-25). Plaintiff was then returned to his cell where he was left to

2

bleed for several hours.  (*Id.* ¶¶ 26-27).  The following day, Plaintiff was taken for medical treatment.  (*Id.* ¶ 28).  On September 7, 2021, Plaintiff filed his third BP-9 to which Plaintiff did not receive a response.  (*Id.* ¶¶ 29-30).

On August 26, 2022, Plaintiff initiated this action against Pearce, Melvin, and Hector Joyner ("Joyner").  (Doc. # 1).  Bannister brought claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights.  Count I alleged that Pearce, Melvin, and Joyner violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and Count II alleges that Pearce and Melvin conspired to deprive Plaintiff of equal protection of the laws based on his race.  (*Id*. ¶¶ 33-34, 39).  On August 23, 2023, this Court entered an order dismissing Count I in its entirety but declining to dismiss Count II.  (*See* Doc. # 44).

On April 18, 2024, Plaintiff filed his First Amended Complaint, adding the United States as a Defendant and asserting two claims against it under the Federal Tort Claims Act (the "FTCA").  (*See* Doc. # 63).  Count III of the First Amended Complaint alleged vicarious liability for the intentional torts of Pearce and Melvin, employees of the BOP.  (*Id.* ¶¶ 35-39).  Count IV alleged that the United States was negligent in hiring, training and supervising its employees.  (*Id*. ¶¶ 40-45).  The United States has now moved to dismiss the First Amended Complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  (*See* Doc. # 71).

### III. ANALYSIS

#### A. Standard of Review

The United States argues that this Court lacks subject matter jurisdiction because the United States did not waive sovereign immunity with respect to Plaintiff's claims for negligent hiring and supervision and vicarious liability. Because "[s]overeign immunity is jurisdictional in nature," a motion to dismiss on sovereign immunity grounds is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "The United States can bring either type of attack when challenging jurisdiction under the FTCA." *L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) (citations omitted). "The burden is on the plaintiff to prove that jurisdiction exists." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1994).

A factual attack "challenges the factual existence of subject matter jurisdiction;" it "attacks the factual allegations underlying the assertion of jurisdiction, even through the filing of an answer or otherwise presenting competing facts." *L.C.*, 83 F.4th at 542 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. Apr. 2023 Update)). In considering a factual attack, "the court is free to weigh the evidence and satisfy itself of the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598. On the other hand, a "facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction." *L.C.*, 83 F.4th at 542 (quoting *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014)). Facial attacks

"challenge[] subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true." *L.C.*, 83 F.4th at 542 (quoting Wright & Miller, *supra* § 1350). "In a facial challenge, the material allegations in the pleadings are accepted as true and must be construed in the light most favorable to the nonmoving party." *Am. Reliable Ins. Co. v. United States*, 106 F.4th 498, 504 (6th 2024) (citations omitted).

The United States characterizes its challenge as a facial challenge. (Doc. # 71 at 2). Plaintiff appears to argue that this is actually a factual challenge.[1] (Doc. # 76 at 2). While it is true that a motion to dismiss an FTCA claim for lack of subject matter jurisdiction can be brought as a factual challenge, that is not always the case, nor is it the case here. *Compare Robinson v. United States*, No. 6:21-cv-204-REW, 2024 WL 1219716 (E.D. Ky. Mar. 21, 2024), with *Rudd v. United States*, No. 5:22-cv-00201-GFVT, 2023 WL 4936671 (E.D. Ky. Aug. 2, 2023). The United States has brought a facial challenge to subject matter jurisdiction because it "questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

---

[1] In his Response, Plaintiff argues that:

> While [the United States] characterizes its Motion to Dismiss as a facial challenge, its motion is based on its contention that Defendants Pearce and Melvin were acting outside the scope of their employment. In order to determine whether they were acting within the scope of their employment, the Court must assess Defendant's subjective motivations.

(Doc. # 76 at 2). The Court construes Plaintiff's statement as an argument that the Court should view the United States' challenge as a factual challenge to subject matter jurisdiction.

5

## B. Vicarious Liability

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. The FTCA is a limited waiver of sovereign immunity; it provides that the United States can be sued in tort for personal injury caused by the "wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . ." 28 U.S.C. § 1346(b)(1); *see also U.S. v. Millbrook*, 569 U.S. 50 (2013).[2] The United States continues to have sovereign immunity for wrongful acts of government employes acting outside the scope of their employment. "[T]he determination of whether an employee of the United States acted within [his] scope of employment is a matter of state law." *Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1993) (citations omitted), *abrogated on other grounds by Millbrook,* 569 U.S. 50. Because the alleged wrongful conduct took place in Kentucky, Kentucky law will determine whether Pearce and Melvin were acting within their scope of employment. *Coleman v. U.S.*, 91 F.3d 820, 825–26 (6th Cir. 1996) (noting that "the scope of employment issue is governed by the law of the state in which the conduct at issue occurred").

The United States argues that the acts alleged in the Complaint "could not have been conducted" in the scope and course of Pearce and Melvin's employment with the BOP. (*See* Doc. # 71 at 3–7). This is because neither Pearce nor Melvin's duties include gratuitous violence, their actions did not benefit their employer, and their conduct was

---

[2] Because Pearce and Melvin were "law enforcement officers of the United States Government" at the time that the alleged assaults occurred, the United States can be held vicariously liable for Pearce and Melvin's intentional torts. 28 U.S.C. § 2680(h); *see also Millbrook.*, 59 U.S. 50. The United States does not contest this point. (Doc. # 71 at 4 n.1).

6

"not expectable in view of their duties." (Doc. # 71 at 6–7). In making this argument, the United States urges the court to apply the four-pronged test, set forth in *Coleman v. United States*, to determine if Pearce and Melvin acted within their scope of employment. (Doc. # 71 at 5 (citing 91 F.3d at 824)). The four prongs are:

> (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized special and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties.

*Coleman*, 91 F.3d at 823-24 (citations omitted). This test is no longer consistent with Kentucky law given the Kentucky Supreme Court's opinions in *Patterson v. Blair*, and *Papa John's Int'l Inc. v. McCoy*. 172 S.W.3d 361, 368 (Ky. 2005) (explicitly rejecting an approach to scope of employment analysis which focusses on foreseeability); 244 S.W3d 44, 51–52 (Ky. 2008) (discussing and endorsing *Patterson*'s scope of employment analysis); *see also Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024) (noting that Kentucky has adopted the Restatement's approach to defining scope of employment); *and Scottsdale Ins. Co. v. Sandler*, 381 F. App'x 554, 556 (6th Cir. 2010) (declining to apply the *Coleman* factors because intervening Kentucky Supreme Court caselaw–*Papa John's Int'l, Inc.*, and *Patterson*–called for a different analysis); *and Rudd*, 2023 WL 4936671 at *6 n.2 (observing that the four-factor test is "no longer compatible with Kentucky law after the Commonwealth's court of last resort specifically rejected foreseeability as an element of the scope of employment").

Instead, "Kentucky has adopted the Restatement (Third) of Agency to define the scope of employment." *Laible*, 91 F.4th at 445 (citing *Papa John's Int'l, Inc.*, 244 S.W.3d at 51). "An employee acts within the scope of employment when performing work

7

assigned by the employer or engaging in a course of conduct subject to the employer's control." *Papa John's Int'l, Inc.*, 244 S.W.3d at 51–52 (quoting Restatement (Third) of Agency § 7.07(2) (2006)); *see also Laible*, 91 F.4th at 445. When the tort is intentional, the "focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Papa John's Int'l, Inc.*, 244 S.W.3d at 51 (citing *Patterson*, 172 S.W.3d at 369). "Torts committed to further the employer's business purpose in whole or in part, 'however misguided,' are torts committed within the scope of employment." *Laible*, 91 F.4th at 445 (quoting *Papa John's Int'l, Inc.*, 244 S.W.3d at 52).

However, "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Papa John's Inc.*, 244 S.W.3d at 51–52 (quoting Restatement (Third) of Agency § 7.07(2)). Thus, a store clerk who shot a patron when he mistakenly believed that the patron was attempting to rob his store, was acting within the scope of his employment, even though the clerk's employer previously instructed his employees "never to resist a hold up." *Fredrick v. Collins*, 378 S.W.2d 618, 618, 620 (Ky. 1964); *see also Patterson*, 172 S.W.3d at 370 (discussing *Fredrick*). On the other hand, a bus driver who assaulted another driver following a road rage incident was acting outside of the scope of his employment. *Wood v. Se. Greyhound Lines*, 194 S.W.2d 81, 83 (Ky. 1946); *see also Patterson*, 172 S.W.3d at 370 (discussing *Wood*). This is because the truck driver's decision to assault the other driver was "based on purely personal motives." *Patterson*, 172 S.W.3d at 370 (discussing *Wood*, 194 S.W.2d 81). In other words, Kentucky law places great emphasis on the subjective intent of the tortfeasor to

8

determine if the wrongful act was committed in the scope of employment. *Rudd*, 2023 WL 4936671 at *2 ("The Commonwealth determines the scope of one's employment solely based on the employee's subjective motivation for acting.") (citing *Patterson*, 172 S.W.3d at 369).

Here, there are two separate incidents of abuse alleged in the Complaint. The first incident was allegedly performed by Pearce and "two other unknown officers" on April 20, 2021. (Doc. # 63 ¶¶ 10–18). Plaintiff alleges that Pearce, after completing a strip search of Plaintiff, denied Plaintiff access to a bathroom, and pepper sprayed him, while laughing, in punishment for asking such a question. (Doc. # 63 ¶¶ 11–13). The Complaint further alleges that after pepper-spraying him, Pearce entered the cage Plaintiff was being held in and brutally beat him while calling him racial slurs. (*Id.* ¶¶ 14–16). Plaintiff was then taken to the SHU by Pearce and "two other unknown officers." (*Id.* ¶¶ 17–18).

The first alleged incident, even if true, falls outside of Pearce's scope of employment with the BOP. The proper inquiry is whether Pearce believed he was acting for the benefit of the BOP while beating and tormenting Plaintiff. *Papa John's Inc.*, 244 S.W.3d at 51–52. Taking these allegations as true, the Complaint does not allege that Pearce thought he was furthering the BOP's interests. Rather, the abuse described is the type of senseless, gratuitous violence that does not fall within the scope of a prison guard's employment. *See Robinson*, 2024 WL 1219716 at *10 (physical assault of a prisoner in "retaliation" for prisoner's conduct "in no way furthers the BOP's missions or functions" and thus does not fall within the scope of the guard's employment).

The Complaint suffers from the same deficiency with respect to the second alleged incident of abuse. The second incident allegedly occurred on August 27, 2021. (Doc. #

9

63 ¶ 22). On that day, Pearce and Melvin allegedly took Plaintiff out of his cell, took him to a secluded room without cameras, beat him severely while calling him racial slurs, threatened to kill him, then returned him to his cell and left him to bleed for several hours. (*Id.* ¶¶ 22-27). The Complaint does not allege that Melvin and Pearce believed that they were furthering the BOP's interest by beating and tormenting Plaintiff. Rather, the Complaint alleges that Pearce and Melvin's purpose was to keep Plaintiff from complaining about his mistreatment. (*Id.* ¶ 25). It cannot plausibly be stated that beating a man to prevent him from reporting abuse furthers the BOP's mission or function.

Plaintiff argues that because there have been no depositions taken so far, it would be premature to find that Pearce and Melvin were acting outside of their scope of employment. (Doc. # 76 at 2–3). In support of this argument, Plaintiff offers Pearce and Melvin's responses to interrogatories. (Docs. # 76-1 and 76-2). Plaintiff argues that Pearce and Melvin's responses indicate that "their interactions with Bannister were motivated by concerns over staff and facility safety." (Doc. # 76 at 3–4). Plaintiff also cites to *Foster v. United States*. No. 6:23-cv-179-CHB, 2024 WL 3445482 (E.D. Ky. July 17, 2024).

*Foster* involved an inmate who alleged that he had been physically assaulted by BOP guards while incarcerated. *Id.* at *1-2. In *Foster*, the record was unclear as to the BOP employee's "precise purpose or motive for engaging in the alleged conduct." *Id.* at *3. On the one hand, the plaintiff suggested in his complaint that the assault was done in retaliation for the plaintiff's menacing conduct. *Id.* On the other hand, the plaintiff attached to his complaint a BOP response to the plaintiff's administrative claim with the BOP. *Id.* That document suggested that force was used in order to gain control of the

10

inmate after he had threatened and resisted staff. *Id.* The court reasoned that due to the "conflicting accounts what occurred, and the limited record before the [c]ourt, it would be premature to grant the United States' motion to dismiss" for lack of subject matter jurisdiction. *Id.* at *4.

*Foster* is not applicable here. It appears that the challenge to sovereign immunity in *Foster* was a factual challenge to subject matter jurisdiction. *Id.* at *3 (quoting *B.A. v. United States*, No. 5:21-cv-106-DCR, 2021 WL 4768248 at *1 (E.D. Ky. Oct. 12, 2021)) ("this Court 'can actually weigh evidence to confirm the existence of factual predicates for subject-matter jurisdiction'"). Here, as has already been established, the United States has brought a facial challenge to subject matter jurisdiction. *Supra* § III(A)(1). The Court's job here is merely to evaluate "whether the plaintiff has alleged a basis for subject matter jurisdiction." *L.C.*, 84 F.4th 534 at 542 (quoting *Cartwright*, 751 F.3d at 759). The Complaint does not allege that Pearce or Melvin thought they were furthering their employer, the BOP's, interest. (*See* Doc. # 63). Because the First Amended Complaint does not contain allegations that Melvin and Foster intended to further the BOP's interests, it does not allege a basis for subject matter jurisdiction. Therefore, the United States' Motion to Dismiss Count III of Plaintiff's First Amended Complaint is **granted.**

C. **Negligent Hiring, Training, and Supervision**

There are a number of exceptions to the FTCA's waiver of sovereign immunity, including the "discretionary function exception." 28 U.S.C. § 2680(a). The discretionary function exception retains sovereign immunity for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or

11

an employee of the Government, whether or not the discretion involved be abused.

*Id.* Because the FTCA "is a grant of jurisdiction, a court lacks subject-matter jurisdiction to adjudicate claims falling within exceptions to that grant." *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022) (citing *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012)). An FTCA plaintiff bears the burden of invoking jurisdiction by presenting "a pleading that facially alleges matters not excepted by § 2680 . . ." *L.C.*, 83 F.4th at 543 (quoting *Carlyle v. U.S. Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982)).

"The Supreme Court has established a two-part test for courts to evaluate this exception's application." *Mynatt*, 45 F.4th at 896 (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). First, courts must consider "whether the action is a matter of choice for the acting employee." *Id.* "If there is 'room for judgment or choice in the decision made, the complained of conduct is discretionary." *Id.* (quoting *Kohl v. U.S.*, 699 F.3d 935, 940 (6th Cir. 2012)). "But if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, . . . the employee has no rightful option but to adhere to the direction,' his conduct cannot be deemed discretionary, and the exception does not apply." *Mynatt*, 45 F.4th at 896 (quoting *Berkovitz*, 486 U.S. at 536). If the conduct at issue is discretionary courts must then move on to the second step and ask whether the "choice in judgment 'is of the kind that the discretionary function exception was designed to shield.'" *Mynatt*, 670 F.4th at 896 (quoting *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)).

The discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Mynatt*, 670 F.4th at 898 (citation omitted). The focus should be on "the nature of the actions taken and on whether they

12

are susceptible to policy analysis," as opposed to the employee's "subjective intent in exercising the discretion."  *Id.* (citations omitted).  Before beginning the analysis, it is important to determine "exactly what conduct is at issue and identif[y] which specific policies or regulations the plaintiff alleges were violated."  *Mynatt*, 670 F.4th at 896 (citations omitted); *see also Snyder v. U.S.*, 590 F. App'x. 505, 509 (6th Cir. 2014) (noting that courts should "determine exactly what conduct is at issue" before applying the Supreme Court's two-part test) (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997))*.*

Here, the conduct at issue is that the United States was negligent in hiring, training, and supervising Melvin and Pearce, because they "were unfit to perform the tasks required of a corrections officer in federal prison" and because the United States "knew, or should have known, that [Melvin and Pearce] were unfit to perform the tasks required of a corrections officer and posed an unreasonable risk to Black inmates."  (Doc. # 63 ¶¶ 41–43).  Plaintiff alleges that there were "similar abuses" alleged at FCI Big Sandy going back to "at least 2019," and the BOP "took no action to protect prisoners from these attacks."  (*Id.* ¶¶ 32–33).

At the outset, it is worth noting that Plaintiff has not brought this Court's attention to any "federal statute, regulation, or policy which specifically prescribes a course of action" for hiring, training, or supervising BOP employees.  *Mynatt*, 670 F.4th at 896 (citations omitted).  This absence is fatal to Count IV of Plaintiff's Complaint.

Generally speaking, "employment decisions of a federal agency are a 'discretionary function,' and therefore not subject to the United States' waiver of sovereign immunity under the [FTCA]."  *Snyder*, F. App'x. at 509.  "[S]upervision, training, and

13

retention require policy judgments–the type that Congress intended to shield from tort liability." *Id.* at 510; *see also O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009) ("A number of courts have applied the *Berkovitz* test to cases of negligent hiring, concluding that the selection of employees, officials and officers typically falls within the scope of the FTCA's discretionary function exception.") (collecting cases); *Stout v. United States*, 721 F. App'x. 462, 467 (6th Cir. 2018) ("Moreover, we have 'consistently held that agency supervisory and hiring decisions fall within the discretionary function exception.'") (quoting *Snyder*, 590 F. App'x. at 510).

Although certain decisions relating to government employment do fall outside of the discretionary function exception, *see e.g. L.C.*, 83 F.4th 534, Plaintiff bears the burden of presenting "a pleading that facially alleges matters not excepted by § 2680 . . ." *Id.* at 543 (citations omitted). For example, in *L.C. v. United States*, the plaintiff alleged that she was repeatedly raped by a BOP employee while in BOP custody. *Id.* at 539–40. In her complaint, plaintiff alleged that "the BOP failed to enforce its zero-tolerance policy because its personnel knew or should have known of [the employee's] attacks sooner and failed to report and investigate [the employee]." *Id.* at 544. The plaintiff's complaint specifically referred to BOP policies which contained "non-discretionary directives" which "allow[ed] no judgment or choice." *Id.* at 547–48 (citations omitted). Thus, the plaintiff facially alleged BOP conduct which fell outside of the discretionary function exception. *Id.* Here, Plaintiff has failed to present any law, regulation, or policy which mandates specific conduct by those at the BOP making employment decisions.

Plaintiff argues that "prison officials do not have discretion to allow rampant civil rights abuses." (Doc. # 76 at 4). "To the extent that [the BOP] knew that prison staff were

14

being transported to areas unmonitored by video surveillance and returning with visible injuries, [the BOP] was required to intervene." (*Id.* at 5). The Sixth Circuit rejected a similar argument in *Snyder v. United States*. 500 F. App'x. at 510. In *Snyder*, a woman sued the United States for "negligent hiring, failure to train, negligent retention and supervision" after she was mistakenly arrested following a case of mistaken identity in an FBI investigation. *Id.* at 508. The Sixth Circuit first pointed out that the plaintiff "point[ed] to no specific regulations that would constrain the judgement in making [the employment decisions at issue]." *Id*. at 510. Because the plaintiff did not point to any regulations, the Sixth Circuit held that her claim fell within the discretionary function exception. (*Id.*). The plaintiff argued that the "court's analysis [was] improper because unconstitutional conduct does not fall within the discretionary function exception." *Id.* The court responded that the plaintiff's stance "misse[d] the mark," and that the issue was not whether the conduct was unconstitutional but was instead whether the "individuals at the FBI responsible for hiring and firing and the training and supervision that occurs in between, follow express and explicit mandates or whether they exercise judgment." *Id.* (quoting *Snyder v. United States*, 990 F.Supp.2d 818, 827 (S.D. Ohio 2014)). The Sixth Circuit went on to reason that because "supervision, training, and retention require policy judgments–the type that Congress intended to shield from tort liability" and because the plaintiff did not allege any applicable regulations which were not followed, the district court lacked subject matter jurisdiction over the claim. *Snyder*, 500 F. App'x. at 510.

Here, Plaintiff's argument also "misses the mark." *Id.* The issue is not whether the allegations of prisoner abuse constitute civil rights violations or whether the BOP was "required to act" on allegations of prisoner abuse. Instead, the issue, for purposes of the

15

discretionary function exception, is whether there were any applicable regulations that were not followed by BOP employees in charge of hiring, training, and managing Pearce and Melvin. Because BOP employment "supervision, training, and retention require policy judgments–the type that Congress intended to shield from tort liability" and because Plaintiff has failed to allege that there were any regulations that were not followed, this Court is without subject matter jurisdiction to hear Plaintiff's claim for negligent hiring, training and supervision. For that reason, the United States' Motion to Dismiss Count IV is **granted**.[3]

## IV. CONCLUSION

Thus, for the reasons articulated herein, **IT IS ORDERED** that the United States' Motion to Dismiss (Doc. # 71) is **GRANTED**.

This 4th of February, 2025.



Signed By:
*David L. Bunning*
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Pikecivil\2022\22-91 MOO Re DE 71.Docx

---

[3] In their Motion to Dismiss, the Defendants have also argued that Plaintiff failed to exhaust his administrative remedies. (Doc. # 71 at 12–13). Because the United States' Motion to Dismiss was granted on other grounds, the Court need not address this issue.